**OONA, R.–S.–, a minor, by KATE S., her guardian, Kate S. and Ken R., Plaintiff–Appellee,**

v.

**Patricia McCAFFREY; Gerald Hill; Ronald Lundy, Defendants–Appellants.**

No. 95–16046.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1996.

Decided Aug. 13, 1997.

Amended Aug. 25, 1997.

Opinion withdrawn April 24, 1998.

Order and Opinion April 24, 1998.

Amended May 5, 1998.

Michael D. Senneff, Senneff, Kelly, Kimelman & Beach, P.C., Santa Rosa, California, for defendants-appellants.

Desiree O. Cox, McCann & LoDolce, Santa Rosa, California, for plaintiff-appellee.

Scott N. Kivel, Boonville, CA, and Robert J. Henry, Santa Rosa, California, for amicus curiae Redwood Empire Schools.

Before: WOOD, Jr.,* SCHROEDER and HALL, Circuit Judges.

Opinion by Judge SCHROEDER; Partial Concurrence and Partial Dissent by Judge CYNTHIA HOLCOMB HALL.

---

* The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Cir-

**SCHROEDER, Circuit Judge:**

This is an interlocutory appeal testing the district court's denial of qualified immunity to school district officials in a 42 U.S.C. § 1983 action. The suit was filed by a female student claiming school officials were responsible for permitting sexual harassment by a student teacher and by boys in her class. We must decide whether the district court correctly determined that the duty imposed on school officials by Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* (as amended), to prevent sexual harassment of students was clearly established when the harassment in this case allegedly occurred during the 1992–93 school year. *See Oona R.-S. v. Santa Rosa City Schools,* 890 F.Supp. 1452, 1472–73 (N.D.Cal. 1995).

## BACKGROUND

The plaintiff-appellee, Oona R.-S., was in the sixth grade at J.C. Fremont Elementary School in the Santa Rosa School District in California in 1992–93. She filed this action in February of 1994 against the school district, as well as individual school officials, including her teacher, Patricia McCaffrey; the school principal, Gerald Hill; and the Director of Elementary Education, Ronald Lundy. The individual officials are the defendants-appellants here.

The complaint alleged facts that the district court determined were sufficient to make out a claim of intentional discrimination on the basis of gender on the part of the principal, teacher, and director. The complaint contained allegations of failure to remedy sexual harassment from two different sources. The first was the failure to take steps to remedy inappropriate conduct by a student teacher. The second was the failure to take steps to address adequately the hostile environment created by the male students in Oona's class. The nature of the allegations are described fully in the district court opinion, *see* 890 F.Supp. at 1456–57, and we merely sketch them here.

cuit, sitting by designation.

The student teacher, Ibach, allegedly fondled, kissed, straddled and otherwise inappropriately touched Oona and other students during October of 1992. He also allegedly called Oona "Oona Noodles." The complaint alleged that some of this inappropriate conduct actually took place in the presence of the teacher and principal, and that Oona's parents had demanded on October 16 that the principal remove Ibach from the classroom, which he refused to do. The complaint further alleged that upon noticing that Ibach was still on the school grounds on October 29, the parents confronted director Lundy, three days later. At that time, Lundy alleges, he told them that Ibach had been removed, and that his continued presence on October 29 had been unauthorized. However, beyond that, Lundy was uncooperative in dealing with the concerns of Oona's parents.

The harassment by male students allegedly occurred throughout the fall and winter of the school year. Boys allegedly referred to girls' body parts as "melons" and "beavers," called the girls slang terms for whores, and persisted in other types of offensive behavior. According to one particularly disturbing allegation, a boy struck Oona in the face and told her to "Get used to it." After the parents complained to Lundy and Hill, teacher McCaffrey allegedly retaliated against Oona by lowering her grade; when Oona's mother filed a tort claim against the district, the teacher allegedly retaliated further by, inter alia, withholding awards Oona had won. Oona's parents removed her from the school at the end of the school year and began home schooling.

The school district did not dispute that the complaint stated a claim against the district for violation of Title IX. The individual defendants moved to dismiss the claims brought against them under § 1983, and the district court denied the motions of these defendants. *Oona*, 890 F.Supp. at 1473. This appeal followed.

In ruling on the motions to dismiss, the district court decided a number of issues. The only one before us in this appeal, however, is whether it correctly determined that the individual defendants were not entitled to immunity, because in 1992–93 reasonable

school officials would have known that the conduct alleged by plaintiff would violate plaintiff's federal rights. *Oona*, 890 F.Supp. at 1472.

## JURISDICTION

■ Our decision in *Doe v. Petaluma Sch. Dist.*, 54 F.3d 1447 (9th Cir.1995), controls the scope of our jurisdiction. In *Petaluma*, we considered a § 1983 sexual harassment case that was in the same procedural posture as this one. A school counselor appealed from an order denying him qualified immunity on the ground that his alleged conduct in failing to take steps to stop sexual harassment violated clearly established rights under Title IX. In addition to seeking review of that determination, the counselor in *Petaluma* asked us to consider further whether he, as an individual, could be sued under § 1983 for violations of Title IX, or whether a suit against the school district itself was the exclusive remedy available for such violations.

We expressly declined to consider the latter question in *Petaluma*, holding that our review was limited to considering whether the law allegedly violated, i.e. Title IX's protection against hostile environment sexual harassment in schools receiving federal aid, was clearly established at the time of the conduct in question. We said that in reviewing a denial of qualified immunity, this court has jurisdiction " 'only to decide if defendant's conduct violated ... clearly established [law.]' " *Petaluma*, 54 F.3d at 1449 (quoting *Pelletier v. Federal Home Loan Bank*, 968 F.2d 865, 871 (9th Cir.1992)). We accordingly conclude that our review in this case is limited to the issue of whether the federal rights here asserted were clearly established in the 1992–93 school year, which is a question of law to be reviewed de novo. *See Petaluma*, 54 F.3d at 1449. *See also Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985) (denial of qualified immunity is an appealable decision to the extent that it turns on an issue of law). It is to that issue that we now turn.

## DISCUSSION

*Equal Protection*

■ The Equal Protection Clause creates the right to be free from any purposeful sex discrimination by state actors. This court has rejected a defendant's claim of qualified immunity in a § 1983 claim claiming sex discrimination as a violation of the Equal Protection Clause. *Lindsey v. Shalmy,* 29 F.3d 1382 (9th Cir.1994). The discriminatory conduct at issue in *Lindsey* took place in 1988, and the court concluded that "[w]ell prior to 1988 the protection afforded under the Equal Protection Clause was held, to proscribe any purposeful discrimination by state actors, be it in the workplace *or elsewhere,* directed at an individual solely because of the individual's membership in a protected class." *Id.* at 1386 (citing *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976)) (emphasis added).

Thus, the right to be free from intentional gender discrimination by a state actor was clearly established as early as 1988. Here, Oona alleges that defendants intentionally discriminated against Oona because of her gender in the school year of 1992–93. Defendants are not entitled to immunity from Oona's Equal Protection claim.

*Title IX*

■ The pertinent provision of Title IX provides that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....

20 U.S.C. § 1681(a).

In *Petaluma* we considered a claim that a school counselor had violated Title IX in failing to take steps to stop peer sexual harassment of a student in 1990. *Petaluma,* 54 F.3d at 1451. Although we recognized that an employer's duty under Title VII to remedy peer sexual harassment in the workplace was clear, the majority held that there was no clearly established law imposing a similar duty for school officials under Title IX because courts had, as of 1990, not yet treated the Titles as analogous for purposes of sexual harassment claims. *Id.* at 1452.

The Supreme Court made such an analogy in 1992, however, when it likened the duties of a school district to remedy sexual harassment under Title IX, to the Title VII duties of an employer. In *Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), the Court said:

Unquestionably, Title IX placed on the Gwinnett County Public Schools the duty not to discriminate on the basis of sex, and "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). We believe the same rule should apply when a teacher sexually harasses and abuses a student.

*Franklin,* 503 U.S. at 75, 112 S.Ct. at 1037–38. *Meritor* is, of course, the lead Supreme Court case recognizing that an employer may be liable for sexual harassment that creates a hostile work environment. By citing it with approval in the Title IX context, to define the critical concept of discrimination on the basis of sex, the Supreme Court in *Franklin* was analogizing the duties of school officials to remedy known sexual harassment under Title IX, to those of employers under Title VII.

Several circuits, following *Franklin,* have applied Title VII principles to hostile environment claims under Title IX. The Eighth Circuit, in *Kinman v. Omaha Pub. Sch. Dist.,* 94 F.3d 463, 469 (8th Cir.1996), noted that same sex harassment was actionable under Title VII and wrote "[w]e see no reason to apply a different standard under Title IX." *Id.* at 468. Likewise, the Sixth Circuit held that "a 'hostile environment' sexual harassment claim is cognizable under Title IX," and that Title VII principles guide resolution of such a claim. *Doe v. Claiborne County,* 103 F.3d 495, 514–15 (6th Cir.1996) (citations omitted).

Moreover, two circuits have held, as we do, that plaintiffs may state hostile environment claims for student-to-student harassment, as well as teacher-to-student harassment. The Seventh Circuit in *Doe v. University of Illi-*

*nois,* 138 F.3d 653, 661–62 (7th Cir.1998), held that school officials are not immune for their "failure to take prompt, appropriate action in response to student-on-student sexual harassment. . . ." The Fourth Circuit in *Brzonkala v. Virginia Polytechnic Inst.,* 132 F.3d 949, 957 (4th Cir.1997), *reh'g en banc granted* (Feb. 5, 1998), though not dealing with immunity, considered the school's duties to remedy known peer harassment under Title IX to be the same as that of an employer's under Title VII.

■ In *Petaluma,* when we held that the school officials' duties were not clearly established in 1990, we noted the Supreme Court's 1992 *Franklin* decision and recognized that the result might well be different in a claim of immunity for conduct that occurred after *Franklin* was decided. Because *Franklin* was decided in February 1992, and the conduct here complained of began in October 1992, this is such a case. The holding adumbrated by the majority in *Franklin* is required today: Title VII standards apply to hostile environment claims under Title IX. We expressly recognized that hostile environments include peer harassment in *Ellison v. Brady,* 924 F.2d 872, 878 (9th Cir.1991). Accordingly, we hold that the defendants are not entitled to immunity for their failure to take steps to remedy the hostile environment created by the male students in Oona's class.

We are aware that the law is different in other circuits. The Eleventh Circuit in *Davis v. Monroe County Bd. of Educ.,* 74 F.3d 1186 (11th Cir.1996), *reh'g en banc granted; opinion vacated,* 91 F.3d 1418 (1996), originally held that similar allegations, that the school board knowingly permitted another student's sexual harassment to create a hostile environment, stated a violation of Title IX duties. After en banc review, it held the allegations did not state such a violation. *Davis v. Monroe County Bd. of Educ.,* 120 F.3d 1390 (11th Cir.1997) (en banc). The Fifth Circuit has held that Title IX does not impose liability on a school district for peer hostile environment sexual harassment, absent allegations that the school district itself discriminated based on sex, e.g., by correcting only harassment of boys and not of girls. *See Rowinsky v.*

*Bryan Indep. Sch. Dist.,* 80 F.3d 1006, 1016 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 165, 136 L.Ed.2d 108 (1996).

We have difficulty squaring the reasoning of those cases with the Supreme Court's in *Franklin* and our own in *Petaluma. Rowinsky* and *Davis* imply that school officials, differ from employers, and should not be vicariously liable for the actions of peers under agency principles. But neither the employers under Title VII, nor the school officials under Title IX, are vicariously liable for the actions of others. Rather, they are liable for their own discriminatory actions in failing to remedy a known hostile environment. Thus, Oona seeks only to hold the school liable for its own failure to address adequately a known hostile environment. Accordingly, the district court correctly held that the individual defendants were not entitled to qualified immunity from Oona's peer harassment claim under Title IX.

We stress that the issue before us is narrow. We do not consider what steps school officials may reasonably be required to take to address harassment by fellow students, or when they are required to take them. Hence, we do not consider the extent to which such action may differ from the action reasonably expected of employers to remedy harassment by fellow employees. We hold only that in this circuit the duty to take reasonable steps to remedy a known hostile environment created by a peer is clearly established. Parents have long had a right to expect school officials to do what they reasonably can to protect the children who are temporarily in their custody and to provide an appropriate learning atmosphere. The dissent's position that there is a duty under Title IX to remedy one type of sex discrimination but not another is contrary to controlling authority and to parents' expectations.

■ Defendants' conduct also violated Oona's clearly established rights under Title IX by failing to supervise Ibach. A supervisor may be found liable under § 1983 if the supervisor is "aware of a specific risk of harm to the plaintiff." *Ketchum v. Alameda County,* 811 F.2d 1243, 1247 (9th Cir.1987). This court has also held that, as early as

1988, "complete inaction in the face of claimed harassment cannot be objectively reasonable conduct entitling a supervisor to qualified immunity." *Bator v. Hawaii*, 39 F.3d 1021, 1029 (9th Cir.1994) (denying qualified immunity in a § 1983 action where the violation took place in 1988).

Oona has alleged that defendants here, who were all in supervisory positions to Ibach, knew or had reason to know that Ibach sexually harassed, fondled, and inappropriately touched Oona. Ibach's alleged conduct of sexually harassing a student constitutes sex discrimination, in violation of Oona's federal rights under Title IX. *See Franklin*, 503 U.S. at 75, 112 S.Ct. at 1037–38. Thus, after *Franklin*, a school official in a supervisory position cannot claim immunity for the failure to respond to complaints of harassment and discrimination. Other circuits have reached this conclusion as well. *See Claiborne*, 103 F.3d at 515 (holding that elements to state a supervisory hostile environment claim under Title VII equally apply under Title IX); *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir.1997) (finding Title IX liability for supervisory school officials with actual knowledge of sexual abuse or harassment). The allegations that defendants knew of Ibach's behavior and failed to prevent it are sufficient to show violations of clearly established Title IX rights during the 1992–93 year.

For the foregoing reasons, we AFFIRM the District Court's order denying qualified immunity to the defendants.

CYNTHIA HOLCOMB HALL, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority's holding that the defendants are not entitled to qualified immunity on the plaintiffs' Title IX claim based on their failure to stop peer sexual harassment among students.

The only issue on appeal is whether the individual defendants are entitled to qualified immunity. The defendants are entitled to a dismissal based on qualified immunity "[u]nless the plaintiff's allegations state a claim of violation of clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct.

2806, 2815–16, 86 L.Ed.2d 411 (1985). "The standard for determining qualified immunity is objective. 'If the law at [the time of the official's actions] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.' " *Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir.1995) (citation omitted).

The majority holds that Oona's rights under the Fourteenth Amendment and Title IX were clearly established on the date of the alleged conduct and affirmed the district court's denial of qualified immunity. I disagree. The law does not clearly impose a duty under Title IX on school officials to stop peer sexual harassment. Therefore, the defendants are entitled to qualified immunity on this claim to the extent it relates to the Title IX peer harassment allegations.

There are no cases holding that students have a right under Title IX to be free from peer sexual harassment. Instead, the majority's determination that Title IX clearly protects students from peer harassment depends upon an analogy between Title VII and Title IX: Because peer harassment in the workplace is actionable under Title VII, *Ellison v. Brady*, 924 F.2d 872 (9th Cir.1991), therefore, peer harassment in schools is clearly actionable under Title IX.

It is correct that courts have applied Title VII principles in Title IX cases. Most significantly, in *Franklin v. Gwinnett County Pub. Schs.*, the Supreme Court relied on a Title VII case to find that Title IX protects students from teacher-student sexual harassment:

> Unquestionably, Title IX placed on the Gwinnett County Public Schools the duty not to discriminate on the basis of sex, and "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." We believe the same rule should apply when a teacher sexually harasses and abuses a student.

503 U.S. 60, 75, 112 S.Ct. 1028, 1037, 117 L.Ed.2d 208 (1992) (quoting *Meritor Sav.*

*Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)); *see also Doe v. Claiborne County,* 103 F.3d 495 (6th Cir.1996) (adopting Title VII principles to recognize Title IX hostile-environment claim for teacher-student harassment); *Kinman v. Omaha Pub. Sch. Dist.,* 94 F.3d 463 (8th Cir.1996) (borrowing from Title VII to find a Title IX right against same-sex teacher-student harassment).

The majority, relying on *Petaluma,* concludes that the Supreme Court in *Franklin* clearly established that Title VII rights are analogous to Title IX rights. Therefore, because peer harassment has been recognized under Title VII, the majority holds that peer harassment is clearly recognized under Title IX. I do not believe that *Petaluma* mandates this interpretation, nor do I believe that *Franklin* sweeps so broadly.

The facts and issues in *Petaluma,* a student peer harassment case, were almost identical to those in this case. The *Petaluma* court determined that a school counselor was entitled to qualified immunity because he did not have a clearly established duty to prevent peer sexual harassment under Title IX. The conduct in *Petaluma* arose before the Supreme Court's decision in *Franklin;* therefore, the court was unable to apply the ruling in *Franklin* to its decision. However, the court recognized,

> If [the counselor] engaged in the same conduct today, he might not be entitled to qualified immunity. We would then be required to consider the Supreme Court's recent *Franklin* decision. It might be that today a Title VII analogy likening [the counselor] to an employer and Doe to an employee might provide an argument to consider in a similar Title IX case. However, those arguments are not properly before us.

*Petaluma,* 54 F.3d at 1452. *Petaluma* properly declined to determine the reach of *Franklin.* Instead, it merely reminded the court that the effect of *Franklin* must be considered in future Title IX peer harassment cases. This is such a case.

*Franklin* does not require this court to apply Title VII principles to all Title IX cases. It merely states that teacher-student harassment is sufficiently analogous to employer-employee harassment that "the same rule should apply." 503 U.S. at 75, 112 S.Ct. at 1037. However, the similarity between peer harassment among employees and peer harassment among students is not as clear: While schools do hire and fire their teachers, they do not hire and fire their students. Although an argument can certainly be made for applying Title VII principles to this Title IX case, the analogy is neither clear nor required by *Franklin;* therefore, qualified immunity should not have been denied with respect to the peer harassment. *See Davis v. Monroe County Bd. of Educ.,* 120 F.3d 1390, 1399–1400 n. 13 (11th Cir.1997) (en banc) (explicitly rejecting this analogy because "the Supreme Court has never discussed student-student sexual harassment or generally applied Title VII jurisprudence to [all] Title IX cases").

Based on the foregoing reasons, I respectfully dissent. At the time of the defendants' actions, the law did not clearly establish the defendants' duty under Title IX to stop peer sexual harassment among students.